Filed 5/21/13  S.M. v. Superior Court CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| S. M.,<br><br>  Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>  Respondent;<br><br>SAN FRANCISO HUMAN SERVICES AGENCY,<br><br>  Real Party in Interest. | A138008<br><br>(San Francisco County<br>Super. Ct. No. JD11-3183A) |

S. M., the father of I. M., age 4, and M. P. II, age 3, (collectively, the children) petitions this court to set aside the juvenile court's order setting a permanent plan hearing pursuant to Welfare and Institutions Code[1] section 366.26.  He contends that the court erred in terminating reunification services.  We deny the petition.

## I.  FACTUAL BACKGROUND

On June 16, 2011, the children were referred to the San Francisco Human Services Agency (the Agency) after a domestic violence incident at parents' home.  During the incident, parents engaged in a verbal and physical altercation which was witnessed by the children and during which mother punched M.P. II three or four times with a closed fist.  Father called the police, who arrested mother.

---

[1] All further statutory references are to the Welfare and Institutions Code.

1

On June 16, 2011, a section 300 petition was filed alleging that the children were at risk of serious physical harm as a result of the domestic violence incident and as a result of the failure or inability of parents to protect them given parents' history of recent and severe domestic violence. The petition further alleged that mother had a substance abuse history which included alcohol, methamphetamines, and crack cocaine, and a criminal history which included drug sales and possession and an anger management problem. The petition also alleged that father had an anger management problem and a criminal history including drug sales and possession. On June 20, 2011, the children were detained and placed with father. The court also issued a temporary restraining order (TRO) against mother prohibiting her from contacting father or the children except as required for court-ordered visitation.

On July 22, 2011, the court entered another TRO against mother prohibiting her from contact with the children and father because the prior TRO had been withdrawn based on mother's representation that a criminal order was in place. The criminal order, however, had not been produced to counsel. On August 4, 2011, the court entered a one-year restraining order against mother. The order allowed mother to have supervised visitation with the children. The court set the matter for a settlement conference to be held on August 31, 2011.

The Agency's report, filed on August 4, 2011, noted that parents intended to separate and were living apart. Father continued to live with the children. Mother was currently on probation for drug possession; her term of probation had been extended to four years following the domestic violence incident. Mother was required to participate in a treatment program to address substance abuse and domestic violence issues as a condition of probation.

The Agency reported that father was caring for the children and had agreed to participate in parenting and counseling services. He also continued to be employed. The Agency noted that father had a criminal record and was on probation for three years as a result of a conviction for a drug offense. The Agency recommended that father be given family maintenance services and that supportive services be offered to mother.

On August 24, 2011, prior to the scheduled settlement conference, parents were arrested in the presence of their children at mother's apartment. The arrests were made pursuant to a warrant. The charges against parents included false imprisonment, unlawful entry, burglary, and kidnapping which allegedly occurred during a home invasion.[2] As a result of the arrests, the Agency filed an amended section 300.

On August 29, 2011, the court ordered the children detained and placed them in the care of a maternal aunt. Parents remained incarcerated.

The dispositional and jurisdictional hearing was held on November 1, 2011. The court found the allegations of the first amended section 300 petition concerning parents' failure to protect the children and their August 2011 arrests to be true. The court further found the allegation that parents disregarded the restraining order entered on August 4, 2011, limiting mother's contact with the children to supervised visits, to be true in that father took the children to mother's apartment. The court continued the children's placement with the maternal aunt and ordered reunification services for parents. The court noted additional facts for removal of the children including domestic violence and anger management issues, substance abuse, that parents were on probation, and parents' disregard of the restraining order.

On November 30, 2011, the court modified the restraining order to exclude father from its ambit in order to allow parents to engage in supervised visitation with the children.

The six-month review hearing was held on April 19, 2012. The Agency reported that the children were now living with their paternal great-aunt. Father was having one unsupervised weekly visit with the children at his home or at a nearby playground as well as a weekly visit at the paternal aunt's home. He had tested negative for drugs five times but had missed tests in February and March due to two deaths in his family in February. Father was also participating in both parenting and anger management classes. Mother

---

[2] The parties stipulated during the 12-month review hearing that the charges were dismissed.

was having difficulty balancing her court-ordered reunification services with her probation requirements. She was participating in domestic violence and parenting classes, but had not found a residential program.

The Agency reported that it anticipated father would be ready for return of the children within six months and therefore recommended a continuation of reunification services.

On August 10, 2012, counsel for the children filed an application for an ex parte order to suspend unsupervised visits by father because of a report that the children witnessed father involved in a shooting less than a block from their placement, and that mother had visited the children unsupervised in violation of the court's order.[3] The court granted the order requiring parents to have supervised visitation. On April 19, 2012, the court ordered that reunification services be continued for six months, and set the 12-month review hearing for October 18, 2012.

In October 2012, the Agency reported that mother was again incarcerated. Father stopped attending his parenting and anger management classes in late June 2012. Father had also stopped attending his domestic violence classes in July 2012. The Agency opined that the two deaths in father's family had affected his ability to successfully participate in his reunification services. Father indicated that he planned to return to his domestic violence classes in September 2012. The Agency recommended that reunification services be terminated because neither parent was close to reunification. It noted that M. P. II was under three at the time of removal, and consequently parents were entitled to only 12 months of reunification services. The Agency recommended adoption as the permanent plan, stating that two different family households were interested in adopting the children.

On November 19, 2012, the court continued the matter for a contested 12-month review hearing. The Agency filed an addendum report before the hearing. It stated that

_____

[3] The Agency later learned that father had a gun during the incident, but had not used it; instead he was trying to diffuse a situation in which others were shooting at one another. The children saw father with a gun from a distance.

4

father had missed several visits with the children. Father, however, began unsupervised visits with the children in December and these visits went well. The Agency subsequently learned in January 2013 that the police found drugs on father prior to the visit with mother at the county jail on December 8, 2012. It opined that father's visits to mother at the jail were in contravention of a current stay-away order.

In the addendum report, the Agency reiterated its recommendation that reunification services be terminated for parents. It was concerned that father had not been able to stay away from mother even when she was in jail despite the restraining order. The Agency further reported that it had recently learned that father was convicted in October 2012 of misdemeanor burglary and that he was on probation. Father had not informed the Agency of the conviction or his probation status.

The 12-month review hearing was held on February 21 and 22, 2013. The Agency's protective service worker testified that she was concerned that father would permit mother to have unsupervised contact with the children. She also testified that she had difficulty trusting parents about the truth of their statements because she was not told that father was visiting mother in jail and father did not report being placed back on probation in the fall.

The court found that although father had substantially complied with his service plan, it had concerns about father's ability to keep the children safe, particularly given father's failure to make good decisions and to be forthcoming about certain events that occurred during the dependency period. The court found that conditions still existed that created a substantial risk of detriment if the children were returned to father. The court terminated reunification services and set the matter for a section 366.26 hearing.

## II. DISCUSSION

Father challenges the juvenile court's order terminating reunification services and finding that it would be detrimental to return custody of the children to him. We conclude that the record fully supports the court's order.

The substantial evidence test is the appropriate standard of review. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529.) " 'In juvenile cases, as in other areas of the law,

5

the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' " (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) We thus apply the substantial evidence test to determine whether the record shows clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor . . . and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the [parent's] physical custody." (§ 361, subd. (c)(1); *In re Henry V.*, *supra*, 119 Cal.App.4th at p. 529.)

Here, although father made progress in meeting the requirements of his reunification plan including visitation, parenting and domestic violence classes, his progress was inconsistent. In addition, he continued to have issues which reflected negatively on his ability to keep the children safe. He was arrested in August 2012 for misdemeanor burglary and thereafter convicted and placed on probation. He, however, neglected to inform the Agency of his conviction and probationary status. Moreover, also in August 2012, the children witnessed father with a gun. While father explained that he was trying to diffuse a situation in which others were shooting at one another, the fact that the children saw father in this situation, albeit at a distance as it occurred a block from where they were situated, demonstrated father's inability to make good decisions and safely parent the children. The record further revealed that in December 2012, father was at the county jail visiting mother when drugs were found in the visiting area.[4] Although the police did not arrest him, he was not allowed to visit anymore at the jail.

_____

[4] There was testimony during the contested 12-month review hearing concerning the existence of a criminal stay-away order, and the one-year restraining order issued in August 2011 precluding mother from contacting father. The Agency's position was that father had visited mother at the jail in contravention of the criminal stay-away order. The record does contain a reference to the criminal stay-away order prohibiting mother from contact with father and MP II in a police report dated August 26, 2011. The order, in

The need to address the issue of the children's safety was at the core of father's reunification plan, for it was parents' domestic violence which brought the children before the dependency court. The record demonstrates that at the time of the 12-month review hearing, which was held on February 21 and 22, 2012, the children had been dependents of the court for 20 months, well past the 18 months allowed for reunification under our statutory scheme. (§ 361.5, subd. (a)(3).) The Agency had provided reasonable reunification services; but father failed to avail himself of all of the opportunities he was afforded for reunification. His lapses in judgment, several occurring in the months before the 12-month review hearing, demonstrated that he could not be counted on to provide a safe home for the children. If a parent "waits until the impetus of an impending court hearing to attempt [to correct his or her behavior], the legislative purpose of providing safe and stable environments for children is not served by forcing the juvenile court to go 'on hold' while the parent makes another stab at compliance." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) Substantial evidence supports the juvenile court's decision to terminate reunification services and to set a section 366.26 hearing.

---

effect from June 21, 2011 to June 21, 2014, however, is not in the record, and the restraining order issued by the juvenile court in August 2011 was modified in November 2011 to permit parents to visit the children together. Hence, it is not clear from the record whether father was in violation of any stay-away orders by visiting mother in jail.

## III.  DISPOSITION

The petition for an extraordinary writ is denied on the merits.  (§ 366.26, sub. (*l*).)  Our decision is final in this court immediately in the interests of justice.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Humes, J.